UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SERGIO ROBLES-NOA,

        Plaintiff,

    v.

SECRETARY KRISTI NOEM,
GARRETT J. RIPA,  ICE / U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT,  US
DEPARTMENT OF HOMELAND
SECURITY, ATTORNEY
GENERAL PAMELA BONDI,
EOIR DIRECTOR, U.S.
DEPARTMENT OF JUSTICE,
WARDEN FLORIDA SOUTH SIDE
DETENTION CENTER,

        Defendants.

Case No. 2:26-cv-707-KCD-DNF

_____/

# **ORDER**

Petitioner Sergio Robles-Noa is a Cuban citizen who is subject to a final order of removal. (Doc. 13-3.)[1] He was recently detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his continued detention violates the Fifth Amendment and the Administrative Procedures Act ("APA"). (Doc. 1.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

The Government opposes the petition. (Doc. 9.) For the reasons below, the petition is **DENIED WITHOUT PREJUDICE**.

## I. Background

Robles-Noa arrived in the United States in October 1971 and was paroled as part of the Freedom Flights. (Doc. 9-1 at 1.) His status was adjusted to lawful permanent resident in 1977. (Id. at 2.) But after a criminal conviction for cocaine possession in 1994, ICE placed him in removal proceedings as an aggravated felon and issued a final removal order in 2004. (Doc. 9-1 at 2, 15, 17.) After his prison sentence, ICE detained Robles-Noa but thereafter released him on an order of supervision when removal could not be effectuated at that time. (*Id.* at 12.)

On January 13, 2026, immigration enforcement determined it was appropriate to detain Robles-Noa once more. (Doc. 9-1 at 2.) That same day, Robles-Noa was served a notice of revocation and provided an informal interview. (*Id.* at 14, 7.) ICE determined there is a significant likelihood of removal in the reasonably foreseeable future. (*Id.* at 4.) ICE intends to remove him to Mexico. (*Id.* at 6.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At

its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The Government first claims that two provisions of the INA—8 U.S.C. § 1252(g) and § 1252(b)(9)—preclude federal jurisdiction. This Court has already addressed these arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). Section 1252(g) forecloses judicial review of just three discrete actions by the Attorney General, and challenging the procedural mechanics of a detention is not one of them. Likewise, the zipper clause in § 1252(b)(9) only bars review of claims involving a direct challenge to an order of removal; it does not block a collateral challenge to the legality of physical custody. With the jurisdictional underbrush cleared away, the Court can turn to the merits. Robles-Noa's claims are addressed in turn.

3

### A. Substantive Due Process

Robles-Noa first claims that he is being held in violation of the Fifth Amendment. (Doc. 1 at 5-6.)  In *Zadvydas v. Davis*, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, as here, the *Zadvydas* Court explained ICE should make every effort to remove the alien within a reasonable time. 533 U.S. 678, 701 (2001). Further, the Court concluded that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the Government to provide evidence sufficient to rebut that showing. *Id.* Thus, "in order to state a [due process] claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Robles-Noa's petition is premature because he has not been detained for longer than six months. Until the six-month *Zadvydas* period concludes,

4

detention is presumptively reasonable, and any substantive due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at \*8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at \*12 (M.D. Fla. Jan. 26, 2026). This position finds support in existing precedent. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (after the six-month period, "if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the alien"); *see also Jiang v. Mukasey*, No. 2:08-cv-773-FtM-29DNF, 2009 WL 260378, at \*2 (M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-cv698-FtM-29SPC, 2011 WL 6412425, at \*2 (M.D. Fla. Dec. 21, 2011).

Seemingly recognizing the temporal problem, Robles-Noa's petition jumps to the burden-shifting framework, arguing that his removal is not likely. (Doc. 1 at 6.) This argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at \*4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

5

## B. Procedural Due Process

Robles-Noa also presses a procedural due process claim. (Doc. 1 at 6.) He argues that he did not violate his supervision, so ICE could not revoke his release, and he did not receive an "individualized determination justifying custody" when ICE detained him. (*Id.* ¶¶ 24, 28.)

For starters, it's not entirely clear that Robles-Noa is entitled to a freestanding due process analysis at this time. When the Supreme Court confronted the constitutional perils of indefinite immigration detention in *Zadvydas*, it did not instruct lower courts to start weighing the process afforded to the detainee. It set a timer. For the first six months, detention is presumptively reasonable. *Zadvydas*, 533 U.S. at 701. So until that timer goes off, *Zadvydas* itself seemingly supplies the constitutional metric. *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024). Because Robles-Noa's detention is barely out of the starting gate, he is presumably not yet entitled to anything more.

But even if we assume the due process clause applies with full force, Robles-Noa still comes up empty. At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard.

6

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). According to the unrebutted record, Robles-Noa received both. (*See* Doc. 9-1 at 4-6.) He got exactly what the Fifth Amendment requires—notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Robles-Noa's argument that his clean supervision record precludes ICE from revoking his supervision also fails. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Robles-Noa's release specifically to enforce his outstanding removal order, gave him notice that they were doing so, and afforded him an informal

interview. Returning him to custody served a recognized, legitimate government objective and was done in compliance with the INA's regulations.

The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Robles-Noa the requisite notice and an opportunity to be heard, his procedural due process claim fails.

### C. APA

Robles-Noa also brings a claim under the APA. The difficulty here is twofold. First, he has alleged these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas

8

cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for such claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Robles-Noa has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Robles-Noa is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at *3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

## IV. Conclusion

Robles Noa's legal challenge to the length of his detention is premature, and the procedural due process claim fails, so the habeas petition must be **DENIED**. However, this denial is without prejudice to Robles-Noa refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on April 27, 2026.

Kyle C. Dudek
United States District Judge